996 P.2d 419 (1999)
128 N.M. 629
2000-NMSC-006
In the Matter of the TERMINATION OF Dwayne KIBBE, a certified tenured teacher in the Elida School District.
Dwayne Kibbe, Plaintiff-Appellant,
v.
Elida School District, Defendant-Appellee.
No. 24,858.
Supreme Court of New Mexico.
December 23, 1999.
Rehearing Denied March 14, 2000.
Doerr & Knudson, P.A., Randy Knudson, Portales, for Appellant.
Simons, Cuddy & Friedman, L.L.P., John F. Kennedy, Michele Marks, Santa Fe, for Appellee.

OPINION
SERNA, Justice.
{1} Dwayne Kibbe, a certified school teacher, appeals his termination from the Elida Public Schools. Kibbe contends that his termination violated provisions of the Criminal Offender Employment Act (COEA), NMSA 1978, §§ 28-2-1 to -6 (1974, as amended through 1985, prior to 1997 amendment); alternatively, Kibbe contends that his termination is not supported by substantial evidence and is arbitrary and capricious. We agree with Kibbe that there is not substantial evidence in the record to support his termination. Because we reverse the independent arbitrator's decision upholding the local school board's termination of Kibbe on this ground, we do not reach Kibbe's arguments concerning the COEA.

I. Facts
{2} The Elida school board terminated Kibbe at the close of the 1995-1996 school year. At the time of his termination, Kibbe had been a certified school teacher for approximately twenty years. He had been employed with the Elida Public Schools as both a teacher and a coach for four years. During the 1995-1996 school year, Kibbe taught four classes, seventh-grade New Mexico history, eighth-grade U.S. history, and two classes of physical education. Kibbe also taught the driving portion of driver's education and served as the head basketball coach for the *420 Elida Public Schools. Kibbe had not previously taught driver's education.
{3} On April 13, 1996, Kibbe was arrested in Portales, New Mexico, which is approximately twenty miles from Elida, for driving while intoxicated (DWI). During the booking process at the police station, Kibbe, when told to empty his pockets, threw his change on the ground, striking a police officer in the leg. The officer told Kibbe to cooperate, and Kibbe then attempted to push his way past the officer but did not strike him. Kibbe was subsequently restrained by several officers. Following the incident, Kibbe was charged with three misdemeanor offenses: DWI, see NMSA 1978, § 66-8-102 (1994, prior to 1997 & 1999 amendments), resisting or obstructing an officer, see NMSA 1978, § 30-22-1(A) (1981), and battery, see NMSA 1978, § 30-3-4 (1963).
{4} The Elida school board notified Kibbe of the termination of his employment with Elida Public Schools on April 26, 1996, and pursuant to statute, NMSA 1978, § 22-10-14(C) (1994), Kibbe requested a written statement of the reasons for his termination. On May 8, 1996, the school board provided the following reasons for Kibbe's termination:
1. You have severely compromised your ability to be an effective teacher, coach and employee by being arrested and charged with driving under the influence of alcohol or drugs, resisting or obstructing an officer and battery, especially in your capacity as the driver's education instructor.
2. You have compromised your effectiveness as a teacher, coach and employee by the public scandal involving your behavior as set forth in the criminal complaint filed by Officer Preston Wilkerson of the Portales City Police and witnessed by Officer Gabe Chavez of the E.N.M.U. Police Department.
Kibbe challenged his termination, and after a hearing, the school board upheld the termination by a three-to-two vote. Kibbe then sought review of the school board's decision from an independent arbitrator. See NMSA 1978,§ 22-10-14.1(A) (1994).
{5} A number of witnesses testified before the independent arbitrator. Officer Chavez testified that he observed Kibbe driving his vehicle and that he called Officer Wilkerson for assistance after he witnessed Kibbe jump a curb and drive away at a high rate of speed. Officer Wilkerson testified that Kibbe was driving thirty-nine miles per hour in a thirty mile-per-hour zone. After pulling Kibbe over, Officer Wilkerson smelled alcohol and noticed that Kibbe's eyes were bloodshot and his speech was slurred. Kibbe refused to cooperate with field sobriety tests, refused to take a breath alcohol test, and told Wilkerson, "I'm drunk, and you know it." Officer Wilkerson arrested Kibbe for DWI and transported him back to the police station, where Kibbe became agitated and belligerent.
{6} Sergeant Fred Hamner testified about Kibbe's behavior at the police station. He stated that Kibbe's change hit his leg when Kibbe threw it to the ground and that Kibbe had tried to push past him. However, he testified that Kibbe did not strike him or cause serious harm. As a result, Sergeant Hamner felt that the incident did not warrant anything more than petty misdemeanor charges. Compare NMSA 1978, § 30-22-24(B) (1971) (providing that battery upon a peace officer is a fourth degree felony), with § 30-3-4 (providing that battery is a petty misdemeanor).
{7} Claude Cody, Superintendent of Elida Public Schools, also testified before the independent arbitrator. Cody testified that Elida is a small rural community with about 130 students attending Elida Public Schools. Cody stated on cross-examination that Kibbe is a very good coach and that he did a good job at Elida. He also stated that he had evaluated Kibbe's job performance as commendable on each of the four evaluations he had conducted as superintendent. Of those four evaluations, Kibbe was marked down on only one occasion, for tobacco use on school grounds. Cody testified that Kibbe's termination "ha[d] nothing to do with his ability as a coach or as a teacher in the school setting." According to Cody, almost everyone in the community was aware of Kibbe's arrest for DWI, and the majority of people were against rehiring Kibbe. He stated that Elida Public Schools could not have employees exhibiting *421 the type of behavior that Kibbe had exhibited on the night he was arrested. He asserted that being a good role model is integral to both teaching and coaching. Cody testified that he believed that the school board had just cause to terminate Kibbe.
{8} Cody also testified about another DWI incident involving a teacher from the Elida Public Schools. The parties stipulated that an Elida teacher was convicted of DWI in 1980 and that she had not been terminated from employment as a teacher. Cody testified that the teacher, who was also a substitute bus driver at the time, had three beers at a party and was stopped by a police officer while driving home. She refused to undergo field sobriety tests because, according to Cody, she had a medical condition that affected her balance; instead, she chose to plead guilty to a charge of DWI. Cody stated that the DWI conviction was referenced in the teacher's next evaluation as a "driving incident," was characterized as having been resolved, and was never placed on the teacher's permanent record. Cody confirmed that the Elida school board took no disciplinary action against the teacher. This teacher is now a head teacher at the Elida elementary school.
{9} Following the school board's presentation of evidence, Kibbe testified before the independent arbitrator. He stated that he was sorry for his actions on the night of the arrest. He testified that he had not had any alcohol since that night and that he was attending Alcoholic's Anonymous. Kibbe also explained that as a coach he taught his players to maintain a high level of fitness and instructed them not to use alcohol or drugs. He testified that he punished players for using alcohol but that he always helped the players overcome their problem and gave them a second chance. Kibbe testified that with this approach he was never forced by a repeat incident to remove a player from the team. When asked what kind of example he thought his behavior set for students, Kibbe responded that he had spoken to each of his players and many of his students and that he used his arrest as a teaching tool to convey the message that leadership is not infallible. Finally, Kibbe stated that he coached the Elida basketball team in twenty games at an independent summer basketball camp following the arrest.
{10} Pursuant to statute, the independent arbitrator conducts a de novo review of the school board's termination decision. Section 22-10-14.1(D). Specifically, the independent arbitrator assesses "whether there was just cause for the decision of the local school board ... to terminate the employee." Id. The Legislature has defined "just cause" in this context as "a reason that is rationally related to an employee's competence or turpitude or the proper performance of [the employee's] duties and that is not in violation of the employee's civil or constitutional rights." NMSA 1978, § 22-10-2(F) (1994). Before the independent arbitrator, the Elida school board bears the burden to "prove by a preponderance of the evidence that, at the time the notice of termination was served on the employee, the local school board ... had just cause to terminate the employee." Section 22-10-14.1(J). Following the presentation of evidence, the independent arbitrator affirmed the school board's decision to terminate Kibbe.

II. Procedural History and Standard of Review
{11} Although the Legislature has provided that the independent arbitrator's decision is "binding on both parties and shall be final and nonappealable except where the decision was procured by corruption, fraud, deception or collusion," Section 22-10-14.1(P), Kibbe sought review of the independent arbitrator's decision by writ of certiorari in the district court. See Rainaldi v. Public Employees Retirement Bd., 115 N.M. 650, 654, 857 P.2d 761, 765 (1993) ("A writ of certiorari ... lies when it is shown that an inferior court or tribunal has exceeded its jurisdiction or has proceeded illegally, and no appeal or other mode of review is allowed or provided."); Rule 1-075(A) NMRA 1999 (governing review by the district court of "any state or local government administrative or quasi-judicial entity" by writ of certiorari "pursuant to the New Mexico Constitution when there is no statutory right to an appeal or other statutory right of review"); cf. Roberson v. *422 Board of Educ., 78 N.M. 297, 299-300, 430 P.2d 868, 870-71 (1967) (stating that, due to the lack of statutory provision for appeal from the New Mexico State Board of Education, "the only remedy available for reviewing the actions of the State Board [affirming a local school board's discharge of a teacher] was certiorari"). In reviewing the constitutionality of a similar statute, this Court recognized that "due process, together with separation of powers considerations, requires that parties to statutorily mandated arbitration be offered meaningful review of the arbitrator's decision." Board of Educ. v. Harrell, 118 N.M. 470, 485, 882 P.2d 511, 526 (1994).
{12} Under Rule 1-075(Q),
[t]he district court may enter an order reversing the decision of the agency if it finds that:
(1) the agency acted fraudulently, arbitrarily or capriciously;
(2) based upon the whole record on review, the decision of the agency is not supported by substantial evidence;
(3) the action of the agency was outside the scope of authority of the agency; or
(4) the action of the agency was otherwise not in accordance with law.
Accord Harrell, 118 N.M. at 485, 882 P.2d at 526. Applying this standard, the district court affirmed the decision of the independent arbitrator.
{13} Kibbe appealed the district court's order to the Court of Appeals, see Rule 1-075(T), and the Court of Appeals, determining that the issue of a school board's termination of a teacher's employment for DWI and the potential impact of the COEA on that termination constitutes a matter of substantial public interest, certified the case to this Court. See NMSA 1978, § 34-5-14(C)(2) (1972). On appeal, we review the decision of the independent arbitrator under the same standard applicable in the district court. See Conwell v. City of Albuquerque, 97 N.M. 136, 138, 637 P.2d 567, 569 (1981). Thus, we must examine whether the independent arbitrator's decision that the Elida school board had just cause to terminate Kibbe is arbitrary or capricious, not supported by substantial evidence in the record as a whole, or otherwise not in accordance with law.

III. Evidence of Just Cause for Termination
{14} We begin our analysis of the independent arbitrator's decision with the plain language of the statute. See Whitely v. New Mexico State Personnel Bd., 115 N.M. 308, 311, 850 P.2d 1011, 1014 (1993) (stating that "the plain language of the statute [is] the primary indicator of legislative intent"). "`[J]ust cause' means a reason that is rationally related to an employee's competence or turpitude or the proper performance of [the employee's] duties and that is not in violation of the employee's civil or constitutional rights." Section 22-10-2(F). The school board introduced substantial evidence that Kibbe drove while under the influence of alcohol and that he did not cooperate with police officers. However, there is no evidence in the record that these actions, standing alone, have any relationship whatsoever to Kibbe's competence as a teacher and a coach. To the contrary, Superintendent Cody testified that the termination had nothing to do with Kibbe's ability to teach and coach. We also conclude that these actions do not involve moral turpitude. See, e.g., Finley v. State, 661 So.2d 762, 765 (Ala.Crim.App.1995) (stating that resisting a police officer, assault in the third degree, and driving under the influence "are not crimes of moral turpitude"); Hall v. Hall, 261 Ga. 188, 402 S.E.2d 726, 727 (1991) ("[A] misdemeanor conviction for DUI is not a crime of moral turpitude."); Lopez v. State, 990 S.W.2d 770, 778 (Tex.App.1999, no pet.) ("A misdemeanor driving while intoxicated conviction is not an offense involving moral turpitude."); cf. State v. Lara, 109 N.M. 294, 298, 784 P.2d 1037, 1041 (Ct.App.1989) (upholding a trial court's determination that the crime of allowing oneself to be served alcohol as a minor was not an offense involving moral turpitude).
{15} The school board, in its written reasons for termination, stated that the "public scandal" caused by Kibbe's arrest "compromised [his] effectiveness as a teacher, coach *423 and employee." Before the independent arbitrator, however, the only evidence of any public scandal came from Superintendent Cody. According to Cody, almost the entire community of Elida was aware of Kibbe's arrest, and from Cody's interaction with community members, he believed that a majority of community members opposed rehiring Kibbe. Kibbe testified that each member of the community to whom he spoke had voiced support for him. Based on the record as a whole, we are unable to conclude that the school board introduced substantial evidence that a public scandal, if one existed, would have interfered with the proper performance of Kibbe's duties as a teacher and a coach in the Elida Public Schools. Pursuant to Section 22-10-14.1(J), it was incumbent upon the school board to demonstrate by a preponderance of evidence that Kibbe's actions were rationally related to his competence as an employee or to the proper performance of his duties. In this case, the school board did not present evidence that Kibbe's arrest actually affected his ability to teach effectively or to serve as a proper role model for students; instead, the school board relied on Superintendent Cody's testimony about community sentiment and the importance of a teacher and coach providing a good example for students. Because Cody merely surmised that Kibbe's job performance would be impeded by the DWI incident, however, we believe that this testimony is of limited value in assessing the relevant factor under the statute: whether the DWI incident had an actual effect on Kibbe's ability to properly perform his duties. Looking at the record as a whole, Kibbe's testimony that he spoke to his students and players about the incident, that he used the incident as a teaching device, and that he coached the Elida basketball team during the summer serves as the only relevant evidence relating to Kibbe's ability to interact with students and players following his arrest. In light of this testimony and the absence of any relevant evidence to the contrary from the school board, we believe that there is no evidence "that a reasonable mind would regard as adequate to support [the] conclusion" that Kibbe's actions prevented the proper performance of his required teaching and coaching duties. Fitzhugh v. New Mexico Dep't of Labor, 1996-NMSC-044, ¶ 24, 122 N.M. 173, 922 P.2d 555 (defining substantial evidence).
{16} With respect to Kibbe's position as a driver's education instructor, Cody testified that teaching driver's education was not a condition of Kibbe's employment. Additionally, Kibbe testified that he had not previously taught driver's education, that he was merely assisting the school by filling a position that had recently become vacant, and that he had not yet completed the necessary training to receive the mandatory certification that would have been required of him in order to serve as a driver's education instructor the following school year. Under these circumstances, while it may have been prudent to remove Kibbe from teaching the driving portion of driver's education, we believe that the school board failed to introduce substantial evidence that Kibbe's actions were rationally related to his competence in performing his required duties as a history and physical education teacher and as a coach.
{17} We believe the prior DWI incident involving another Elida teacher further supports our conclusion that the school board's termination of Kibbe must be reversed. While a school board's decision not to impose disciplinary action against an employee for certain conduct does not foreclose disciplinary action against a different employee in the future for similar conduct, the record in this case is devoid of any meaningful distinction between Kibbe's conduct and that of the other Elida school teacher. In other words, the school board introduced no evidence suggesting that Kibbe's conduct, in contrast to that of the other teacher, affected his ability to teach and coach in Elida schools. Further, Superintendent Cody ruled out the possibility that a distinction could be made based on a change in community and student attitudes toward DWI or the increased seriousness of the offense at the present time as compared to 1980. Cody testified that under no circumstances would he have recommended terminating the other Elida teacher for her behavior, even if it had occurred at the present time. From this testimony, as well as the vast difference in the treatment of the two teachers, from no disciplinary action whatsoever for the incident in 1980 to the extreme sanction of terminating Kibbe's employment, we conclude that the school *424 board's decision to terminate Kibbe for this incident was arbitrary and capricious. Cf. New Mexico State Bd. of Educ. v. Stoudt, 91 N.M. 183, 186-87, 571 P.2d 1186, 1189-90 (1977) (concluding that the State Board of Education's decision to terminate a pregnant, unmarried teacher for immoral conduct "was arbitrary, unreasonable and not supported by substantial evidence" based in part on the fact that the local school board had retained five unwed mothers and had taken no action against them).
{18} We reverse Kibbe's termination on the basis that the school board's decision is not supported by substantial evidence in the record as a whole and was arbitrary and capricious. Because we reverse Kibbe's termination on this ground, it is unnecessary for us to address Kibbe's argument that it would be anomalous to permit a teacher's termination prior to a conviction based on alleged crimes that would not subject a teacher to termination under the COEA after conviction. See NMSA 1978, § 28-2-4(A) (1985, prior to 1997 amendment) (providing that a board or agency may refuse to renew public employment if, among other things, the employee "has been convicted of a felony or a misdemeanor involving moral turpitude" and either the conviction "directly relates to the particular employment" or the employee "has not been sufficiently rehabilitated to warrant the public trust"); see also NMSA 1978, § 28-2-3(B) (1974) (providing that criminal records of misdemeanor convictions not involving moral turpitude shall not be used in connection with an application for public employment). We do, however, take note of the Legislature's expression of a public policy in the area of public employment which favors rehabilitation for crimes not directly relating to employment. See NMSA 1978, §§ 28-2-2 (1974) (stating that barriers to public employment for criminal offenders "should be removed to make rehabilitation feasible"), -4(A)(2).

IV. Conclusion
{19} Reviewing the record as a whole, we believe that the independent arbitrator's decision that the school board proved by a preponderance of evidence that Kibbe's conduct was rationally related to his competence or turpitude or the proper performance of his duties is not supported by substantial evidence. While we do not question Superintendent Cody's testimony that acting as a good role model is an integral part of teaching, the school board failed to introduce any evidence suggesting that Kibbe's DWI incident had any relationship to his competence as an employee or to the proper performance of his duties, as required by the relevant statutes. We also conclude that the drastic difference in the school board's treatment of Kibbe compared to another Elida teacher for substantially similar conduct with no explanatory evidence in the record renders Kibbe's termination arbitrary and capricious. We therefore reverse the independent arbitrator's decision. Pursuant to Section 22-10-14.1(N), we order that Kibbe shall be reinstated to his former position as a teacher and coach in the Elida School District, and we further order that Kibbe shall be "reimburse[d] for compensation during the entire period for which compensation was terminated... less an offset for any compensation received by [Kibbe] during the period the compensation was terminated."
{20} IT IS SO ORDERED.
MINZNER, C.J., and BACA, FRANCHINI, and MAES, JJ., concur.