This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41623**

**MARCOS PADILLA,**

Appellant-Respondent,

v.

**NEW MEXICO CORRECTIONS DEPARTMENT,**

Appellee-Petitioner.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**James Lawrence Sanchez, District Court Judge**

Ferrance Law, P.C.
David A. Ferrance
Albuquerque, NM

for Respondent

Macke Law & Policy, LLC
Daniel J. Macke
Albuquerque, NM

for Petitioner

### MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** This appeal arises from the New Mexico Corrections Department's (NMCD) termination of Marcos Padilla's employment. After the New Mexico State Personnel Board (the Board) upheld Padilla's termination, Padilla appealed to the district court. The district court reversed the Board, and this Court granted NMCD's petition for a writ of certiorari. We reverse the district court and uphold the Board's termination decision.

**BACKGROUND**

**{2}**     We briefly set out the facts, as found by the Board, and the relevant procedural history.[1] We reserve discussion of additional facts, as needed, for our analysis.

**{3}**     At the time of his termination, Padilla had been employed with NMCD for approximately eighteen years and was a correctional officer at Central New Mexico Correctional Facility (CNMCF). Padilla was found in possession of contraband when NMCD conducted an interdiction operation at CNMCF to ensure no contraband was being brought into the facility. On the day in question, Padilla "entered Building A of . . . CNMCF and found that neither the metal detector nor the x-ray machine was in use." "Padilla walked past the metal detector and x-ray machine to enter B Control, a secure area in the facility," "where the door automatically locked behind him." The following then transpired:

> While in B Control, [Padilla] realized that he had a cell phone and pocketknife on his person. He requested that the B Control officer open the door so he could return the items to his car. The B Control officer declined. Instead, . . . [Padilla was] directed . . . to the [v]isitation [r]oom where [the i]nterdiction [o]peration was underway. . . . Padilla disclosed that he had a cell phone and pocketknife on his person. He was directed to surrender the items; he refused. . . . Padilla was directed multiple times to surrender his cell phone; he refused. He was escorted to Warden Hatch's office. The Warden explained to . . . Padilla that should he fail to surrender his cell phone for inspection, he may be terminated. . . . Padilla, again, refused to surrender his cell phone.

Warden Hatch directed Padilla to human resources (HR) to be placed on administrative leave. Padilla "left the prison facility after he was directed to meet with someone in HR" and then "he returned his cell phone and pocketknife to his vehicle."

**{4}**     Padilla was found in violation of the NMCD orientation policy prohibiting cell phones (the "NMCD cell phone policy"), which he acknowledged receipt and understanding of on four separate occasions during his employment with NMCD. The NMCD cell phone policy provides in relevant part:

> [A]ll employees shall be informed that cell phones . . . are not permitted in any correctional institution or at any security post and shall acknowledge their understanding by signing the Cell Phone Acknowledgement form . . . . Any employee who violates this policy shall be subject to disciplinary action.

---

[1]After NMCD terminated Padilla for the below-described conduct, he appealed to the Board, *see* NMSA 1978, § 10-9-18(A) (2009), and an evidentiary hearing was held before an administrative law judge (ALJ). The ALJ made numerous findings of fact and conclusions of law and issued a recommended decision upholding Padilla's dismissal, which the Board adopted.

1. No one is authorized to bring in a cell phone . . . into the institution or at any security post. Any employee bringing in a cell phone for the purpose of giving the device to an inmate has committed a felony act and State Police will be notified, the Office of Professional Standards (OPS) [will be notified], and an investigation initiated.

2. Employees found to have violated this policy will be required to immediately surrender their device for inspection by an investigator/supervisor. Should the employee terminate service or attempt to erase information from the device prior to the return of the device to the employee, [NMCD] will presume the device contained incriminating information. This will result in the employee's dismissal.

3. Violations of this policy have occurred as follows: . . . CNMCF (Main) . . . : At the time the employee attempts to clear the metal detector or their property enters the x-ray machine.

Beyond violating the NMCD cell phone policy "when he brought a cell phone into . . . CNMCF and failed to surrender it for inspection," the Board also determined Padilla violated codes of conduct in several ways:

Padilla violated the Governor's Code of Conduct (which requires employees to ethically perform the responsibilities of public office) and the NMCD Code of Ethics when he was insubordinate, refusing multiple orders from his superiors. He also violated the NMCD Code of Ethics when he brought a pocketknife into the facility, which was contrary to the legitimate objectives of his duties as a correctional officer. . . . Padilla continually failed to cooperate with management or adhere to directives. His conduct adversely affected his ability to perform his duties as a correctional officer.

**{5}** Based on the foregoing, the Board determined that "Padilla was continually insubordinate," "Padilla's actions constitute[d] serious, intentional misconduct," and there was "just cause" to terminate him. *See Selmeczki v. N.M. Dep't of Corr.*, 2006-NMCA-024, ¶ 15, 139 N.M. 122, 129 P.3d 158 ("Just cause to terminate an employee covered by the Personnel Act requires that the [b]oard determine both that the employee engaged in misconduct and that the discipline was appropriate and reasonable in light of the misconduct."); *see also* 1.7.11.10(B) NMAC (defining "just cause" to include, among other things, "inefficiency; incompetency; misconduct; negligence; [and] insubordination"). Padilla appealed to the district court. *See* NMSA 1978, § 10-9-18(G) (2009); NMSA 1978, § 39-3-1.1(C) (1999). After a hearing, the district court reversed the Board's decision "as arbitrary and capricious and not supported by substantial evidence." We granted NMCD's petition for writ of certiorari, pursuant to Rule 12-505(B) NMRA and Section 39-3-1.1(E), to conduct further review.

**DISCUSSION**

**{6}** Before addressing the merits of the Board's termination decision, we first set out the applicable standard of review.

## I.     Standard of Review

**{7}** "Upon a grant of a petition for writ of certiorari under Rule 12-505, this Court conducts the same review of an administrative order as the district court sitting in its appellate capacity, while at the same time determining whether the district court erred in the first appeal." *Town & Country Food Stores, Inc. v. N.M. Regul. & Licensing Dep't*, 2012-NMCA-046, ¶ 8, 277 P.3d 490 (text only) (citation omitted). "Thus, we review the [p]ersonnel [b]oard's order to determine if it is arbitrary, capricious, or an abuse of discretion; not supported by substantial evidence in the record; or, otherwise not in accordance with law." *Sais v. N.M. Dep't of Corr.*, 2012-NMSC-009, ¶ 15, 275 P.3d 104 (alteration, internal quotation marks, and citation omitted). Although "we must perform a whole record review, we must be careful not to substitute our own judgment for that of the agency." *Id.* ¶ 16 (text only) (citation omitted). "The burden is on the party challenging the agency decision to demonstrate grounds for reversal." *Selmeczki*, 2006-NMCA-024, ¶ 13.

## II.     The Board's Termination Decision

**{8}** We begin with Padilla's challenge to the Board's termination decision before briefly examining the district court's rationale for reversing the same.

## A.     Padilla's Arguments

**{9}** By and large, Padilla does not dispute the factual findings underlying the Board's decision. Instead, Padilla challenges the Board's interpretation of the NMCD cell phone policy, claiming, under the correct interpretation of the policy, he never violated the policy such that the Board's termination decision was arbitrary and capricious and not supported by substantial evidence.

**{10}** The Board determined that Padilla violated the NMCD cell phone policy at two discrete points in CNMCF: first, "when he walked past the x-ray machine and metal detector with his cell phone" in Building A; and second, "when he entered B Control, a security post, with his cell phone."[2] On appeal, Padilla argues that "the [NMCD cell phone] policy could be violated only if [he] attempted to clear a metal detector or put his phone in an x-ray machine, neither of which happened." Specifically, as for Building A, Padilla contends no violation occurred here because neither the metal detector nor the

---

[2]NMCD contends that Padilla violated the policy at a third point—when he was scanned with a handheld metal detector in the visitation room as part of the interdiction operation. The Board, however, did not identify or rely on a third violation in affirming Padilla's dismissal. We therefore give NMCD's contention no further consideration. *Cf. Evans v. Valley Diesel*, 1991-NMSC-027, ¶ 3, 111 N.M. 556, 807 P.2d 740 (providing that under the whole record review standard, "the reviewing court ordinarily should not make independent findings except in the limited circumstances . . . such as when the trial court's findings are contrary to undisputed evidence in the record or when the evidence is documentary or by way of deposition" (alteration, internal quotation marks, and citation omitted)).

x-ray machine at that location were operational. As for B Control, Padilla contends no violation occurred here because, in his view, the mere possession of a cell phone at a security post does not violate the NMCD cell phone policy. Even assuming there was no violation at Building A, as Padilla contends, we are not persuaded the Board's determination that a violation occurred at B Control was erroneous.[3]

**{11}** In support of his contention that the NMCD cell phone policy can only be violated if an employee "attempt[s] to clear a metal detector or . . . the cell phone pass[es] through an x-ray machine," Padilla invokes principles of contract interpretation. He argues that the above-quoted provision in Section 3 of the NMCD cell phone policy controls over the general prohibition of bringing cell phones "into the institution or at any security post." We reject this contention for a couple of reasons.

**{12}** As an initial matter, nowhere in its fifteen pages of factual findings and legal conclusions, does the Board address the contract interpretation argument Padilla now advances on appeal. Nor, based on our review of the record, does it appear this argument was raised in the administrative proceedings before the ALJ or the Board. *See Selmeczki*, 2006-NMCA-024, ¶ 23 ("We generally will not review a matter not passed upon by the trial court, which in this case was either the ALJ sitting as the trier of fact, or the [p]ersonnel [b]oard as the ultimate decision maker. While the formal rules of procedure need not all be followed in administrative proceedings, we do require preservation of issues raised on appeal from an administrative decision." (citation omitted)); *Sais*, 2012-NMSC-009, ¶ 28 (declining to review a legal argument presented by the respondent employee for failure to make the argument to the board). Nonetheless, even assuming Padilla's contract interpretation argument was properly before the Board, we conclude it is without merit.[4]

**{13}** In Padilla's view, a violation of the NMCD cell phone policy at CNMCF occurs under only one circumstance—when an employee "attempt[s] to clear a metal detector or . . . the cell phone pass[es] through an x-ray machine," pursuant to Section 3 of the policy. While this certainly is one instance in which the NMCD cell phone policy may be violated at CNMCF, making it the exclusive circumstance, as Padilla insists, ignores other provisions of the policy. In particular, the NMCD cell phone policy prohibits not just the bringing of a cell phone "into the institution"—which at CNMCF is defined as Padilla suggests—but also prohibits cell phones "at any security post." Padilla's construction ignores the word "or" in the phrase "into the institution *or* at any security post," essentially nullifying the phrase "at any security post." *See Montoya v. Villa Linda Mall, Ltd.*, 1990-NMSC-053, ¶ 9, 110 N.M. 128, 793 P.2d 258 ("The word 'or' is ordinarily given a disjunctive meaning. It signifies an alternative—either one or another possibility

---

3Although the district court appeared to agree with Padilla that there was no violation at Building A, contrary to Padilla's repeated contentions on appeal that the district court found there was no violation of the NMCD cell phone policy whatsoever, the court determined that Padilla's possession of a cell phone at B Control was "a technical violation of the [policy]."

4We assume for purposes of this opinion that the NMCD cell phone policy should be construed pursuant to principles of contract interpretation, as Padilla contends, because, even applying these principles, Padilla does not prevail. *Cf. Sanders v. Est. of Sanders*, 1996-NMCA-102, ¶ 1, 122 N.M. 468, 927 P.2d 23 (assuming without deciding a legal issue because it is not outcome-determinative).

is contemplated." (citation omitted)). If we were to read the NMCD cell phone policy as Padilla suggests, "we would be assigning no meaning to the language '[into the institution]' different than would be assigned to the phrase '[or at any security post].'" *See id.*

**{14}** Such a construction is contrary to well-established principles of contract interpretation and the very case law Padilla cites in his briefing. *See, e.g.*, *Pub. Serv. Co. of N.M. v. Diamond D Const. Co.*, 2001-NMCA-082, ¶ 19, 131 N.M. 100, 33 P.3d 651 ("[W]e view the contract as a harmonious whole, give meaning to every provision, and accord each part of the contract its significance in light of other provisions. We will not interpret a contract such that our interpretation of a particular clause or provision will annul other parts of the document, unless there is no other reasonable interpretation." (citations omitted)). We thus decline Padilla's construction. We conclude instead that the Board's determination that Padilla violated the NMCD cell phone policy "when he entered B Control, a security post, with his cell phone" was based on a reasonable, and not an arbitrary or capricious, interpretation of the NMCD cell phone policy. *See Hobbs Gas Co. v. N.M. Pub. Serv. Comm'n*, 1993-NMSC-032, ¶ 6, 115 N.M. 678, 858 P.2d 54 (providing that under the arbitrary and capricious standard, "[t]he burden is on [the party challenging the administrative decision] to show that the order of the [administrative body] is unreasonable or unlawful"); *Sais*, 2012-NMSC-009, ¶ 16 (providing that the board's "ruling is arbitrary and capricious if it is unreasonable or without a rational basis, when viewed in light of the whole record").

**{15}** Padilla's remaining arguments, including that substantial evidence did not support his termination and that NMCD's choice of discipline was disproportionate to what others received, are contingent upon his claim that he did not violate the NMCD cell phone policy. Having dispensed with Padilla's claim that he did not violate the policy at B Control, we find his remaining challenges provide no basis to reverse the Board.

## B.    The District Court's Ruling

**{16}** Next, we turn to the district court's ruling. The district court reversed the Board's termination decision because, according to the court, "it was based upon an arbitrary interpretation of [the NMCD cell phone policy] rather than the exact language of the [policy]" such that substantial evidence did not support the selected discipline of dismissal. We separately review the rationale underlying this ruling because, contrary to Padilla's assertions on appeal, the district court did not reverse the Board based on the interpretation of the NMCD cell phone policy Padilla advances on appeal. Instead, having reviewed the entire hearing transcript before the district court, we understand the court reached this result because it believed Warden Hatch misread the NMCD cell phone policy to include a per se dismissal rule for the failure to surrender a cell phone, and that Warden Hatch's view of the policy was the sole basis for Padilla's termination. Although it is true that, as found by the Board, Warden Hatch "viewed . . . Padilla's refusal to surrender his phone in the same light as if [he] wiped his cell phone clean to protect incriminating evidence, which was grounds for termination" under Section 2 of the NMCD cell phone policy, the Board did not find this to be the sole basis for Padilla's

termination. Indeed, the district court ignored myriad factual findings by the Board left unchallenged by Padilla, *see Socorro Elec. Coop., Inc. v. N.M. Pub. Regul. Comm'n*, 2024-NMSC-017, ¶ 55, 557 P.3d 68 (providing that a substantial evidence challenge will be waived unless the agency's findings of fact are attacked with particularity), that establish Padilla's termination was, as NMCD aptly puts it, "predicated upon willful misconduct and insubordination, not a misreading of the cell-phone policy." We explain.

**{17}**   Examining the violation at B Control, the Board found:

> The evidence is uncontroverted that . . . Padilla had a cell phone and pocketknife on his person when he walked into B Control. B Control is a security post. Per the [NMCD cell phone p]olicy, cell phones were not allowed at security posts. . . . Padilla confirmed that he was aware that he could not take his cell phone to a post.

Except for his legal challenge to the NMCD cell phone policy already discussed, Padilla does not contest these findings—including that B Control is a security post and that Padilla was aware he could not take his cell phone to a post. Given this, the Board's determination that "Padilla violated the [cell phone p]olicy when he entered B Control, a security post, with his cell phone" is binding on appeal. *See id.* Likewise, the Board's finding that Padilla was thus obligated to surrender his cell phone pursuant to Section 2 of the NMCD cell phone policy is binding, as are the Board's determinations that Padilla's repeated failures to do so and follow other directives violated the NMCD cell phone policy, the Governor's Code of Conduct, and the NMCD Code of Ethics. In light of the foregoing and based on our review of the whole record, as outlined in the background section, we conclude that substantial evidence supports the Board's determinations that Padilla was "continually insubordinate," his "actions constitute[d] serious, intentional misconduct," and "just cause" existed to dismiss him. *See Selmeczki*, 2006-NMCA-024, ¶ 20 (in evaluating what conduct constitutes "just cause" for termination, this Court examined various cases, noting "the importance of willful misconduct" and observing that "insubordination" and "misconduct," among other things, "clearly fall within the category of conduct constituting just cause for dismissal" (internal quotation marks and citation omitted)); *see also Elephant Butte Irrigation Dist. v. N.M. Water Quality Control Comm'n*, 2022-NMCA-045, ¶ 15, 516 P.3d 231 ("Substantial evidence on the record as a whole is evidence demonstrating the reasonableness of an agency's decision, and we neither reweigh the evidence nor replace the fact-finder's conclusions with our own." (alteration, internal quotation marks, and citation omitted)). The district court's decision to the contrary is erroneous.

**CONCLUSION**

**{18}**   For the foregoing reasons, we reverse the district court and uphold the Board's termination decision.

**{19}   IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JANE B. YOHALEM, Judge**