2000-NMCA-107

16 P.3d 444

Sarah HYDEN, Petitioner–Appellant,

v.

NEW MEXICO HUMAN SERVICES DE-
PARTMENT, Income Support Division
and Robin Dozier Otten, Deputy Secre-
tary, Respondents–Appellees.

No. 20,508.

Court of Appeals of New Mexico.

Nov. 22, 2000.

Clark de Schweinitz, Northern N.M. Legal
Services, Inc. Santa Fe, NM, Joel Jasperse,
Northern N.M. Legal Services, Inc. Gallup,
NM, for Appellant.

Rumaldo R. Armijo, General Counsel, Su-
san K. Rehr, Assistant General Counsel,
Marsha Zenderman, Assistant General Coun-
sel, NM Human Services Department, Santa
Fe, NM, for Appellees.

*OPINION*

ALARID, Judge.

**INTRODUCTION**

{1} By statute and regulations, the New
Mexico Human Services Department (De-
partment) is required, upon a timely request,
to afford a fair hearing to any Medicaid
recipient whose application for medically nec-
essary treatment is denied. In the present
case, Petitioner, a Medicaid recipient, alleges
that she suffers from an unusual disorder-
multiple chemical sensitivity syndrome-and
that this disorder could not have been effec-
tively treated by the three in-network aller-

gists to whom she was referred by her Medicaid-provided managed care organization (MCO). When her request for an out-of-network specialist was refused by the MCO, she declined the treatment offered by the MCO and sought a fair hearing before an administrative hearing officer. Without receiving evidence on the merits of Petitioner's claim that referral to an out-of-network specialist was a matter of medical necessity, the hearing officer dismissed the appeal on the ground that any denial or reduction of Medicaid services was the result of Petitioner's actions and not the result of any actions that could be attributed to the Department or the MCO. Thereafter, the director of the Department's Hearings Bureau adopted the hearing officer's findings, analysis, and conclusions as the Department's final decision. Petitioner appealed the Department's final decision to the First Judicial District Court. The district court dismissed the appeal on the ground that the MCO was not a state actor, and therefore, the MCO's actions did not trigger a right to procedural due process.

{2} We reverse the district court and remand this case to the Department for a fair hearing as mandated by New Mexico law.

## STANDARD OF REVIEW

{3} "On appeal, we review the decision of the [agency] under the same standard applicable in the district court." *In re Termination of Kibbe*, 2000–NMSC–006, ¶ 13, 128 N.M. 629, 996 P.2d 419 (discussing standard of review under parallel provision of Rule 1–075(T) NMRA 1999). The parties agree that the standard of review is found in Rule 1–074(Q) NMRA 2000 (effective January 1, 1996). Under this standard, we examine the record to determine whether the Department's decision to deny a fair hearing to Petitioner is arbitrary or capricious, not supported by substantial evidence in the record as a whole, or otherwise not in accordance with law.

## BACKGROUND

{4} Petitioner is disabled under the Social Security Act. She receives $500 per month in Supplemental Security Income (SSI). As an SSI recipient, she qualifies for medical services under the Medicaid program. In New Mexico, the Medicaid program is administered by the Department through its Medical Assistance Division. In 1998, the Department adopted a managed care system known as "SALUD!." Under the SALUD! program, Petitioner was required to select one of three MCO's as her healthcare provider. Petitioner elected Lovelace SALUD!.

{5} Petitioner claims that she suffers from several medical conditions, including multiple chemical sensitivities syndrome, a thyroid condition, chronic fatigue syndrome and severe allergies to certain foods. Petitioner claims that conventional medical treatment has proved ineffective or even detrimental:

1) I am too sensitive to receive the type of allergy injections that allergists give. I have tried it in the past and would become very ill with every injection-my blood pressure would drop and I would break out in welts all over my body. The ill effects would last for days. The allergists who gave me these injections in the past told me that I was far to [sic] sensitive and allergic for that kind of treatment. Also, due to my chemical sensitivities I cannot tolerate the preservatives in the antigens.

{6} Petitioner claims that in the past she has been successfully treated by licensed physicians employing non-conventional techniques, including preservative-free allergy drugs.

{7} At Petitioner's request, her primary care physician referred Petitioner to an out-of-network physician who specializes in environmental medicine. This referral was reviewed and denied by the Lovelace SALUD!'s medical director on the ground that the requested physician was "not a contracted provider." Petitioner contacted Lovelace SALUD! by phone to complain about the denial of a referral. Lovelace SALUD! notified Petitioner in writing that "[w]hile you have Lovelace [SALUD!] coverage you must see Lovelace [SALUD!] contracted providers." Lovelace SALUD! provided Petitioner with the names of three in-network allergists.

{8} Petitioner wrote Lovelace SALUD!'s grievance coordinator, explaining in detail why conventional therapy had not worked for her. She also explained that she had con-

tacted the offices of the three in-network allergists and had confirmed that each of them employed the types of conventional therapy that had proven ineffective in treating Petitioner's conditions. Lovelace SALUD! responded as follows:

> After a review of your file and your grievance, our Medical Director's decision is that the original denial ... is upheld. Per our Medical Director[,] homeopathic or alternative therapies would not be covered either in or outside of the contracted network since they are not covered benefits. Care is available within the Lovelace Community Health Plan for the diagnoses of thyroid dysfunction, chronic fatigue syndrome and allergies as long as such care is medically necessary, occurs within the context of the benefit language and within the contracted network of providers. To access this care please work with your Primary Care Physician, who would submit the request to Lovelace Community Health Plan for specialty services based on medical necessity.
>
> If you would like to grieve this decision, please submit to Lovelace Community Health Plan within thirty days. If you would like to pursue a process through the state, please contact the Administrative Hearings Bureau.

{9} Prior to receiving the letter quoted above, Petitioner wrote to the Department to request its assistance. The Department treated Petitioner's letter as a request for a hearing and assigned the matter to a hearing officer. At the direction of the hearing officer, Petitioner (by then represented by counsel) and the Department submitted briefs outlining their respective positions. Petitioner's brief quoted from 8 NMAC 4.MAD.606.11.4, which provides that "[m]embers may file a request for an administrative hearing through the HSD Hearings Bureau without first availing themselves of the MCO's grievance process when the final decision rendered by an MCO is to terminate, suspend, reduce or *not-provide benefit(s)*." (Petitioner's emphasis). In its brief, the Department argued that Petitioner was not entitled to a hearing because she did not have a constitutionally protected property interest in her choice of a particular health care provider and because Lovelace SALUD! was not engaged in state action when it denied her request for an out-of-network referral.

{10} Based upon the parties' briefs, the hearing officer concluded that Petitioner had "established the minimum factual grounds that give rise to a right to a fair hearing." At the hearing, Petitioner's counsel raised the issue of whether the notice provided to Petitioner complied with Medicaid regulations. The Department responded that no notice was required because Petitioner had unilaterally refused the treatment offered by Lovelace SALUD!; therefore, she had not been subjected to a reduction, termination or denial of services. According to the Department, unless and until Petitioner accepted the treatment offered by Lovelace SALUD!, Petitioner could not be said to have been denied medically necessary treatment. In the course of addressing the notice issue, the hearing officer expressed concern that "I'm not seeing ... this case having developed yet to the point where there was a reduction, a termination or suspension of benefits." After further argument, the hearing officer ruled that "there has been no termination, reduction or suspension of benefits, I am reluctant to go forward to a full hearing because there is no standing. It is too premature."

{11} The hearing officer confirmed his oral ruling in a Notice of Recommendation to Dismiss Case:

> As a result of the exhibits and testimony provided at the ... hearing, it became apparent that Ms. Hyden's case was not ripe, and that Lovelace SALUD!, the Medicaid managed care organization in which Ms. Hyden is enrolled, had taken no action to reduce, suspend, or terminate those Medicaid services. Because Ms. Hyden has suffered no reduction, suspension, or termination of Medicaid services provided by the Lovelace SALUD! program, she was not entitled to receive a written notice. I have studied the jurisdictional assertions contained in the briefs. Ms. Hyden's position in favor of the exercise of fair hearing jurisdiction is that HSD must provide an adequate notice of the denial and reduction

of medically necessary services, and that Ms. Hyden's medically necessary Medicaid benefits services were so denied and reduced. HSD's position against the exercise of fair hearing jurisdiction in this case is that Ms. Hyden has not shown how HSD or Lovelace SALUD! has taken any action to reduce, terminate, or modify Medicaid services provided to Ms. Hyden, and that the alleged denial or reduction of Medicaid services were the result of actions taken by Ms. Hyden herself, and not the result of any actions that could be attributed to HSD or Lovelace SALUD!

As a result of my review of the positions of the parties, I have determined that no grounds exist upon which a fair hearing right may be exercised because: (1) there has been no denial or untimely processing of Ms. Hyden's application for Medicaid; (2) Ms. Hyden's Medicaid services have not been reduced, suspended, or terminated; and (3) HSD has taken no action (to terminate, suspend, or reduce Ms. Hyden's Medicaid benefits) in error. I hereby recommend that the administrative fair hearing of this matter not proceed and that this case be dismissed on the basis that a fair hearing case was opened in error.

. . . .

I am not convinced that any action was taken by HSD or Lovelace SALUD! to reduce, suspend, or terminate Ms. Hyden's Medicaid services at this point in time. Ms. Hyden is currently enrolled with Lovelace SALUD! and is eligible to receive Medicaid services through that program. The representatives at Lovelace SALUD! stated at the hearing, through counsel for HSD, that the program remains willing to work closely with Ms. Hyden to find an appropriate physician from the list of the hundreds of health care professionals currently associated with that program, complete with paid transportation services to and from medical appointments. I agree that the actions or inactions taken by Ms. Hyden are the cause of her difficulty in obtaining a satisfactory referral to a physician acceptable to her.

{12} In a subsequent written Hearing Decision, the Director of the Department's Hearings Bureau adopted the hearing officer's findings, analysis and conclusions as the Department's decision in this case.

{13} Petitioner appealed the Hearing Decision to the First Judicial District Court. In her statement of appellate issues, *see* Rule 1–074(K) NMRA 2000, Petitioner asserted that she "has a right under federal and state regulations to a fair hearing." Petitioner quoted 8 NMAC 4.MAD.433 for the proposition that "a recipient '. . . can request a hearing if his/her eligibility or service is terminated, suspened [sic] or reduced, or if he/she believes that MAD (Medical Assistance Division) has taken action in error.'" In its statement of appellate issues, the Department asserted that it had not taken any action to reduce, suspend or terminate Petitioner's Medicaid services and that any reduction, suspension or termination of services to Petitioner resulted from her own actions, not those of the Department.

{14} At the hearing on the appeal, Petitioner referred to her due process rights under *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), as well as her fair hearing rights under Lovelace SALUD!'s contract with the State of New Mexico and under the Department's regulations. The Department emphasized two recent United States Supreme Court decisions, *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) and *Shalala v. Grijalva*, 526 U.S. 1096, 119 S.Ct. 1573, 143 L.Ed.2d 669 (1999). The Department argued that these cases established that a private MCO is not engaged in state action when it reviews a Medicaid recipient's request for medical services. In response to the district court's questioning, the Department conceded that apart from constitutional due process there may be a regulatory obligation to provide a hearing in terms of the regulations that have been promulgated by the State. The Department argued that any right to a fair hearing conferred by regulation had not been triggered because any failure to provide services had resulted from Petitioner's refusal to accept the services offered by Lovelace SALUD! rather than from any action by Lovelace SALUD! or the Department. The district

court ruled that under *American Mfrs.* and *Grijalva*, Petitioner's appeal was not well-taken. The district court entered a written order explaining its ruling:

1. The May 3, 1999 Order of the United States Supreme Court vacating and remanding the judgment of the Ninth Circuit Court of Appeals in *Shalala v. Grijalva[ v. Shalala]*, *et al* 152 F.3d 1115 (1998), for further consideration in light of *American Manufactures [sic] Mutual Insurance Company v. Sullivan* [526 U.S. 40], 119 S.Ct. 977[ 143 L.Ed.2d 130] (1999) is controlling in this Appeal.

2. Plaintiff–Appellant's Appeal is without merit and is dismissed because Lovelace Salud is not a "state actor" when it makes medical review decisions that result in a reduction, suspension or termination of benefits in the Medicaid Salud Program, and these decisions do not trigger constitutionally protected due process rights.

### DISCUSSION

{15} Petitioner argues that this case can be resolved without reaching the constitutional issues on which the district court based its ruling. Petitioner argues that we do not need to reach the question of whether Lovelace SALUD! is a state actor because a fair hearing is guaranteed by an extensive regulatory and statutory framework which does not incorporate a state action requirement. We agree.

NMSA 1978, § 27–2–12.6 (1994) provides:

A. The [human services] department shall provide for a statewide, managed care system to provide cost-efficient, preventive, primary and acute care for medicaid recipients by July 1, 1995.

B. The managed care system shall ensure:

(1) access to medically necessary services, particularly for medicaid recipients with chronic health problems.

NMSA 1978, § 27–3–3(A) (1973, as amended through 1991) provides:

A. An applicant for or recipient of assistance or services under any provisions of the Public Assistance Act [or] Social Security Act ... or regulations of the [income support division, the medical assistance division or the social services division of the human services department] adopted pursuant to those acts may request a hearing in accordance with regulations ... if:

(1) an application is not acted upon within a reasonable time after the filing of the application;

(2) an application is denied in whole or in part; or

(3) *the* assistance or *services are* modified, terminated or *not provided*.

(Emphasis added).

The Department has promulgated the following regulations:

An applicant can request a hearing if his/her application for services is denied or is not acted upon with reasonable promptness. A Medicaid recipient can request a hearing if his/her eligibility or service is terminated, suspended or reduced, or if he/she believes that MAD has taken an action in error.

8 NMAC 4.MAD.433 (citation to Code of Federal Regulations omitted).

The MCO must contract with a sufficient number of specialists with the applicable range of expertise to ensure that the anticipated needs of MCO members will be met within the MCO network of providers. *The MCO must also have a system to refer members to providers who are not affiliated with the MCO network if providers with the necessary qualifications or certifications to provide the required care do not participate in the network.*

. . . .

8 NMAC 4.MAD.606.5.5 (1997, as revised 1998) (emphasis added).

Members may file a request for an administrative hearing through the HSD Hearings Bureau without first availing themselves of the MCO's grievance process *when the final decision rendered by an MCO is to* terminate, suspend, reduce, or *not-provide benefit(s)*.

8 NMAC 4.MAD.606.11.4 (1997) (emphasis added).

{16} A Medicaid recipient's interest in *avoiding inappropriate* treatment may in many instances be just as important as the recipient's interest in *obtaining appropriate* treatment. We conclude that under the above statutes and regulations, a take-it-or-leave-it offer of treatment that in fact is ineffective or harmful to the recipient, is equivalent to a "denial" or "non-provision" of medically necessary services. A recipient is not required to submit to inappropriate treatment and risk adverse consequences to her health in order to obtain a fair hearing on the appropriateness of the treatment offered by an MCO. Here, Petitioner alleged both a past lack of success with the type of conventional therapy offered by Lovelace SALUD! and a history of successful treatment by licensed physicians employing non-conventional therapy. These allegations were sufficient under the statutes and regulations cited above to entitle Petitioner to a fair hearing to determine whether Lovelace SALUD! in fact has contracted with providers having the necessary qualifications to provide Petitioner with appropriate treatment.

{17} Our conclusion that statutes and regulations afford Petitioner a right to a fair hearing obviates the constitutional analysis applied by the district court. *See Hillman v. Health & Soc. Servs. Dep't,* 92 N.M. 480, 481, 590 P.2d 179, 180 (Ct.App.1979).

## CONCLUSION

{18} We reverse the decision of the district court and remand this case to the Department for a fair hearing.

{19} **IT IS SO ORDERED.**

BUSTAMANTE, and KENNEDY, JJ., concur.