# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2019-NMCA-066**

**Filing Date: May 16, 2019**

**No. A-1-CA-36283**

**AMY J. LAW,**

      Appellant-Petitioner,

**v.**

**NEW MEXICO HUMAN SERVICES DEPARTMENT,**

      Appellee-Respondent.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sarah M. Singleton, District Judge**

Certiorari Denied, August 1, 2019, No. S-1-SC-37786. Released for Publication November 12, 2019.

Senior Citizens' Law Office
Michael C. Parks
Albuquerque, NM

for Petitioner

New Mexico Human Services Department
John R. Emery, Deputy General Counsel
Santa Fe, NM

for Respondent

Disability Rights New Mexico
Alice Liu Cook
Joseph P. Turk
Albuquerque, NM

Amicus Curiae

## OPINION

**M. ZAMORA, Chief Judge.**

**{1}** This appeal raises the issue of whether the New Mexico Human Services Department (HSD) has jurisdiction to adjudicate discrimination claims pursuant to Title II of the Americans with Disabilities Act of 1990 (ADA Title II), 42 U.S.C. § 12132 (2012), and Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794(a) (2012), in an administrative services proceeding. The Director of the Medical Assistance Division (MAD) of HSD dismissed Amy J. Law's (Petitioner) demand for a fair hearing regarding her request for what she characterizes as a "reasonable accommodation" in Medicaid transportation services, because Petitioner's case was not an "adverse action" within the meaning of HSD, 8.352.2.10 NMAC (defining adverse action), and the Human Rights Bureau of the New Mexico Department of Workforce Solutions would be a "more appropriate venue" for the case. The district court affirmed MAD's decision to dismiss. Petitioner appeals the district court's dismissal order, asserting that it was contrary to law, given MAD's obligation to prevent discrimination on the basis of disability. This Court granted certiorari to review the district court's order, pursuant to Rule 12-505 NMRA.

**{2}** We affirm the district court's order, concluding that MAD does not have the authority to decide and adjudicate violations of ADA Title II or Section 504. In light of our conclusion, we need not address Petitioner's additional arguments that (1) she was not required to exhaust administrative remedies with the Managed Care Organization (MCO) prior to requesting a fair hearing on her claim, and (2) MAD violated her due process rights under the Fourteenth Amendment to the United States Constitution. *See Hillman v. Health & Soc. Servs. Dep't*, 1979-NMCA-007, ¶ 4, 92 N.M. 480, 590 P.2d 179 (declining to reach a due process argument raised in a medical services appeal based on "the principle that a court will not decide constitutional questions unless necessary to a disposition of the case").

**BACKGROUND**[1]

**{3}** Petitioner is a member of UnitedHealthcare, an MCO that contracts with HSD to administer the provision of Medicaid benefits and services to eligible members. One of the Medicaid-eligible services Petitioner uses is non-emergency medical transportation. UnitedHealthcare, as the MCO, contracts with LogistiCare to provide those transportation services, and LogistiCare makes the transportation arrangements with various providers. As relevant to this appeal, although Petitioner and her counsel made several written requests for "reasonable accommodation," only two of those documents were made part of the record on appeal, Petitioner's January 2016 letter request and her counsel's June 2016 letter request, both sent to the MCO. In her January 12, 2016 handwritten letter, Petitioner made the following request of the MCO:

> One company of your choosing, dependable and timely, with decent vehicles, to provide service for all my arranged medically necessary rides;

---

[1] The Court's policies and procedures require that the factual and procedural background are verified in the case record prior to signing and filing of an opinion.

[t]he driver shall be female; [t]he same driver for all legs of trips within a day; to have an assigned driver (or a select few drivers for rotation) to provide my transportation requirement.

In February 2016 Petitioner sent a follow-up letter to LogistiCare. The MCO's e-mail response to Petitioner stated that the MCO and LogistiCare were "unable to meet [her] request for reasonable accommodations" and asked the MCO representative to provide Petitioner with "the reimbursement mileage form, as member refuses to call LogistiCare for standard accommodations." The MCO also sent letters to Petitioner in March and April 2016 in response to two grievances she filed,[2] advising her that "LogistiCare cannot guarantee a female driver at all times," and noting that "[i]f you will allow LogistiCare to use providers other than Safe and [Care] they would have a greater opportunity to accommodate your request." In late April 2016 LogistiCare sent another letter to Petitioner, in response to her April 13, 2016 request,[3] that the MCO provide her with transportation services in which other passengers are not male. LogistiCare's response, citing to 49 C.F.R. Subtitle A, Part 38 (1991, as amended through 2014), stated that there was "no reference to reasonable accommodation standards in the ADA [Title II] related to the assignment of one transportation provider to a person, the gender of an assigned driver, other riders in the vehicle, or a requirement that the same driver be assigned to a person for all trips in one day." LogistiCare's response also explained that because "company policy prevents discrimination against any individual on the basis of . . . gender . . . LogistiCare will not be able to screen transportation providers or drivers on the basis of your stated preferences[,]" and "cannot guarantee the gender of any members with whom you may share a ride." The letter further advised Petitioner that she could "choose to take advantage of LogistiCare's gas reimbursement program [whereby a] family member or friend may receive gas reimbursement for transporting you to your health care appointments if that is a more convenient way to arrange your transportation."

**{4}** On June 16, 2016,[4] Petitioner's counsel sent a written "reasonable accommodation request" for similar transportation-related accommodations to the MCO, "pursuant to (1) Section 504 of the Rehabilitation Act of 1973 and its regulations, 29 U.S.C. §§ 701[-796 (2018); 45 C.F.R. §§ 84.4 . . ., and (2) Title II of the [ADA] and its regulations, 42 U.S.C. § 12132; 28 C.F.R. § 35.130 [(2016)]." A courtesy copy of the request was provided to HSD. Counsel requested that Petitioner "receive her transportation services exclusively from female drivers, and that she be the sole occupant of the vehicle (or at the least without male occupants)." Further, counsel's request stated that Petitioner's "disabilities are such that failure to receive that accommodation has caused and continues to cause her to miss important, medically necessary health care services." On August 18, 2016, the MCO responded to

---

2Petitioner's March 10, 2016 and March 24, 2016, grievances are referenced in the MCO's letters to Petitioner, but are not included in the record on appeal.

3Petitioner's April 13, 2016, letter to the MCO is referenced in LogistiCare's letter to Petitioner, but is not included in the record on appeal.

4The May 23, 2016, letter from Petitioner to the MCO, which is referenced in counsel's June 16, 2016, letter to the MCO, was not made part of the record on appeal.

Petitioner's counsel: "The requested reasonable accommodation is denied at this time, based upon the member's failure to provide any information that would enable [the MCO] to evaluate the request to determine whether or not under the circumstances it is a reasonable request." It does not appear from the record that HSD responded separately to counsel's letter, although HSD's compliance officer was listed as a recipient of a courtesy copy of the letter.

## Administrative Proceedings

{5}     On August 30, 2016, Petitioner requested a fair hearing "to appeal the failure of [the MCO] and [HSD] to grant her a reasonable accommodation in Medicaid transportation services."[5] The MCO moved to dismiss the request for fair hearing and argued, without conceding that the matter was an "adverse action" for which Petitioner may request a fair hearing, that Petitioner failed to exhaust the MCO appeal process, which is a prerequisite for requesting a fair hearing. *See* 8.352.2.11(B) NMAC (MCO's grievance procedures). Petitioner argued in response, citing no legal authority, that "government programs—especially those receiving federal funds—for persons with disabilities are established by federal law; and are binding on both HSD and [its MCO]"; "the requirement that MCO members exhaust their internal appeals procedures as a prerequisite to seeking a Fair Hearing clearly applies only to the medical necessity of services per se;" and "a Request for a Reasonable Accommodation is a legal matter[,] which the MCO's internal appeals procedures are ill-suited to review."

{6}     The Administrative Law Judge (ALJ) recommended dismissing the matter on the ground that the denial of Petitioner's "request for reasonable accommodations in obtaining non-emergency medical transportation . . . clearly does not meet the definition of an adverse action for which an administrative hearing through the Fair Hearings Bureau is available." The ALJ relied on 8.352.2.10 NMAC (defining "adverse action" to include denial or reduction of service, or failure to approve a service in a timely manner) and 8.352.2.11 NMAC (discussing the "right to an HSD administrative hearing" when MAD has taken an "adverse action") in concluding that Petitioner's claim "falls outside the authority of the Fair Hearings Bureau." MAD's Director agreed with the ALJ's conclusion and recommendation and dismissed the matter without conducting a hearing. The Director based her decision on "the fact that the case does not meet the definition of an adverse action and that a more appropriate venue would be the New Mexico Human Rights Bureau."

## District Court Proceedings

{7}     Pursuant to Rule 1-074 NMRA, Petitioner filed an appeal with the district court. She argued that under 42 C.F.R. § 431.53(a) (2009), which requires MCO's to "ensure

---

5Petitioner states the reason for the administrative appeal somewhat differently in her briefing in this Court: "to contest [the] MCO's *denial* of her request for a reasonable accommodation in access[ing] Medicaid services, and the [HSD's] *failure to* [*respond* to] her complaints about her need for the [requested] reasonable accommodation." (Emphases added.) Because neither party argues that a different standard should apply to each alleged action or respective party, we analyze both actions in the same manner for purposes of this appeal.

necessary transportation for beneficiaries to and from providers[,]" her request for a fair hearing must be granted. She further argued that denial of the requested accommodation fits within two categories of "adverse action": (1) "[t]he denial or reduction by [a beneficiary's MCO (*and* MAD)] of an authorized service," and (2) "the failure of MAD . . . or the MCO to approve a service . . . in a timely manner." 8.352.2.10(A), (D) NMAC. Moreover, Petitioner argued that denial of her requested accommodation amounted to discrimination on the basis of disability in violation of Section 504, ADA Title II, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. HSD argued in response that Petitioner "did not supply any basis or justification for her request[,]" and the matter did not qualify as an adverse action because there was no reduction or denial of transportation services. *See* 8.352.2.10 NMAC. Additionally, HSD argued that "[c]laims of discrimination in public accommodations based on physical or mental disability are the exclusive province of the New Mexico Human Rights Commission under the New Mexico Human Rights Act, [NMSA 1978, §§ 28-1-1 to -15 (1969, as amended through 2007)]." Finally, the HSD argued that MAD lacked jurisdiction over Petitioner's claim because Petitioner failed to follow the grievance process for the MCO, which comports with due process requirements.

**{8}** The district court affirmed MAD's decision, citing as supportive authority *Martinez v. New Mexico State Engineer Office*, 2000-NMCA-074, ¶ 27, 129 N.M. 413, 9 P.3d 657, and stating:

> In the same manner [as the plaintiff in *Martinez*], while [Petitioner] sought a fair hearing for denial of services, clearly within the authority of HSD's administrative hearing process, she made the claim under Section 504 and ADA [Title II]. [Petitioner] has not shown any explicit language in HSD's governing statutes or rules that give it authority to decide and adjudicate violations of the ADA [Title II] or Section 504. Therefore, HSD properly dismissed the case.

The district court did not address Petitioner's due process claim or MAD's conclusion that the New Mexico Human Rights Bureau was the proper venue for Petitioner's claim of disability discrimination.

**{9}** Petitioner filed a motion for rehearing—arguing, in relevant part, that *Martinez* was misapplied because that case involved ADA Title I (employment), rather than ADA Title II (programs of public entities), and did not address Section 504 or other statutes "impl[ying]" authority of state agencies to adjudicate discrimination claims—which the district court denied. Petitioner filed a petition for writ of certiorari with this Court, which we granted.

## DISCUSSION

**{10}** Our review of an administrative decision appealed to the district court is by writ of certiorari. *Georgia O'Keeffe Museum v. Cty. of Santa Fe,* 2003-NMCA-003, ¶ 25, 133 N.M. 297, 62 P.3d 754; *see* Rule 12-505(A)(1) NMRA (stating that the Court of Appeals

reviews district court decisions that address administrative proceedings pursuant to Rule 1-074 or NMSA 1978, Section 39-3-1.1 (1999)); *see* Rule 12-505(B) ("A party . . . may seek review of the [district court's] order by filing a petition for writ of certiorari with the Court of Appeals[.]"). We review the decision of the district court acting in its appellate capacity. *See* § 39-3-1.1(E) ("A party to the appeal to district court may seek review of the *district court decision.*" (emphasis added)).

**{11}** "This Court applies the same statutorily defined standard of review as the district court." *Miller v. Bd. of Cty. Comm'rs*, 2008-NMCA-124, ¶ 16, 144 N.M. 841, 192 P.3d 1218 (alteration, internal quotation marks, and citation omitted). "The district court may reverse an administrative decision only if it determines that the administrative entity acted fraudulently, arbitrarily, or capriciously; if the decision was not supported by substantial evidence in the whole record; or if the entity did not act in accordance with the law." *Id.* (alteration, omission, internal quotation marks, and citation omitted). "A ruling by an administrative agency is arbitrary and capricious if it is unreasonable or without a rational basis, when viewed in light of the whole record." *Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 17, 133 N.M 97, 61 P.3d 806. We, however, will not defer to the agency's or the district court's conclusions of law, which are reviewed de novo. *Id.*

**{12}** When presented with a question of statutory construction, our Supreme Court observes the following general principles: (1) "the plain language of a statute is the primary indicator of legislative intent" and it gives "the words used in the statute their ordinary meaning unless the [L]egislature indicates a different intent[;]" (2) the Court "will not read into a statute or ordinance language which is not there, particularly if it makes sense as written[;]" (3) the Court will "give persuasive weight to long-standing administrative constructions of statutes by the agency charged with administering them[;]" and (4) when "several sections of a statute are involved, they must be read together so that all parts are given effect." *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (internal quotation marks and citations omitted).

### I. Non-Discrimination Principles of ADA Title II and Section 504 Apply to MAD and Its Provision of Necessary Transportation for Beneficiaries

**{13}** The Medicaid program, established by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 to 1396w-5 (2012), is a joint federal-state program created to provide "medical assistance" to needy families and individuals. 8.200.400.9 NMAC. States that have elected to participate in the Medicaid program, including New Mexico, must comply with federal statutes and regulations. *See* 42 U.S.C. § 1396a(a)(1), (10)(A); NMSA 1978, § 27-2-12(A) (2006). HSD is "charged with the administration of all the welfare activities of the state[.]" NMSA 1978, § 27-1-3 (2007). MAD, a division within HSD, is the state agency responsible for administering the medical assistance programs. *See* § 27-2-12; 8.200.400.9 NMAC.

**{14}** As relevant here, the federal Medicaid statute defines "medical assistance" to include non-emergency medical transportation. 42 U.S.C. § 1396a(70); *see* 42 C.F.R. §

431.53(a) (2009) (requiring state plan to "[s]pecify that the Medicaid agency will ensure necessary transportation for beneficiaries to and from providers"). Consistent with federal regulations, New Mexico's Medicaid program covers expenses for transportation services that the MAD "determines are necessary to secure covered medical . . . examinations and treatment for . . . [an] eligible recipient." 8.324.7.9 NMAC (citing 42 C.F.R. § 440.170 (2016) (defining transportation services)).

**{15}** Petitioner argues that federal law generally prohibits a state agency from discriminating against an individual on the basis of disability, and that this prohibition applies in the context of fulfilling the obligation to provide non-emergency medical transportation.[6] The law clearly supports Petitioner's argument. *See State, ex rel. Children, Youth & Families Dep't v. John D.,* 1997-NMCA-019, ¶ 15, 123 N.M. 114, 934 P.2d 308 ("The legislative history of the ADA [Title] indicates the purpose of the ADA's Title II was to extend the non-discrimination policy contained in the Rehabilitation Act (which applied only to entities receiving federal funding) to *all* actions of state and local governments."). She further argues that discrimination prohibited by ADA Title II and Section 504 extends to a denial of the ability to benefit from the program in a manner that is not as effective as, or more limited than, that enjoyed by others utilizing the program. *See* 45 C.F.R. § 84.4(b)(i)-(iii), (vii) (2005) (Section 504); 28 C.F.R. § 35.130(b)(1)(ii)-(iii) (ADA Title II).

**{16}** Specifically, ADA Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see* 28 C.F.R. § 35.130(b)(7)(i) (requiring public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability"). In this same vein, Section 504 states: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a); *see* 29 C.F.R. § 32.4 (2003); 45 C.F.R. § 84.4 (2005); 34 C.F.R. § 104.51 (2000). Because neither party argues that the non-discrimination principles of ADA Title II and Section 504 require distinct analysis in this case, we will address them together. *See Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 726 (10th Cir. 2011) ("Because the language of ADA Title II and the Rehabilitation Act is substantially the same, we apply the same analysis to both." (alteration, internal quotation marks, and citation omitted)). We now turn to the question of whether MAD has the authority to adjudicate claims asserted pursuant to ADA Title II and Section 504 in its administrative fair hearings.

---

[6]We need not and do not reach the question of whether the MCO or LogistiCare are state actors for purposes of being bound by the statutes and regulations applied to HSD because "a fair hearing is guaranteed by an extensive regulatory and statutory framework which does not incorporate a state action requirement." *Hyden v. Human Servs. Dep't*, 2000-NMCA-107, ¶ 15, 130 N.M. 19, 16 P.3d. 444.

**II.     Our Legislature Did Not Grant MAD the Authority to Adjudicate Claims Brought Pursuant to ADA Title II and Section 504**

**{17}**     Petitioner contends that MAD discriminated against her based on her disability when she was refused benefits by the MCO for non-emergency transportation to and from medical providers because the MCO failed or refused to accommodate her specific requests. *See* 42 C.F.R. § 431.53(a). HSD argues that MAD is authorized to determine whether a reduction or denial of services or failure to approve a service in a timely manner, constituting an adverse action, was improperly or unreasonably taken against Petitioner, but does not have the authority to adjudicate whether an action was taken in violation of ADA Title II or Section 504.

**{18}**     Federal Medicaid law provides that, where a "claim for medical assistance under the plan is denied or not acted upon with reasonable promptness," a state is required to "provide for granting an opportunity for a fair hearing before the [HSD]." 42 U.S.C. § 1396a(a)(3); *see* 42 C.F.R. § 431.220(a)(1) (2016) ("The State agency must grant an opportunity for a hearing to . . . [a]ny individual who requests it because he or she believes the agency has taken an action erroneously, denied his or her claim for eligibility or for covered benefits or services, or issued a determination of an individual's liability, or has not acted upon the claim with reasonable promptness[.]"); 42 C.F.R. § 431.201 (2016) ("For purposes of this subpart: 'Action' means a termination, suspension of, or reduction in covered benefits or services, or a termination, suspension of, or reduction in Medicaid eligibility or an increase in beneficiary liability[.]").

**{19}**     New Mexico law implementing the Medicaid program provides that a "recipient of assistance or services under any provision of the Public Assistance Act . . . may request a hearing in accordance with regulations of the board if: (1) an application is not acted upon within a reasonable time after the filing of the application; (2) an application is denied in whole or in part; or (3) the assistance or services are modified, terminated or not provided." NMSA 1978, § 27-3-3 (1991); *see* 8.352.2.10 NMAC (defining "adverse action" as including the two theories a petitioner relies on, i.e., denial or reduction of service, and failure to approve a service in a timely manner); 8.352.2.11 NMAC (providing that MAD must grant an administrative hearing, pursuant to 42 C.F.R. § 431.220(a) and Section 27-3-3 when MAD has taken, or intends to take, an adverse action against a claimant as defined in 8.352.2.10 NMAC).

**{20}**     HSD argues that in order for MAD to have authority to adjudicate Petitioner's claims, they must fall within one of the types of matters listed in 8.352.2.10 NMAC, Section 27-3-3, or 42 C.F.R. § 431.220(a), which they do not. We agree with HSD. Petitioner's argument rests on the assumption, for which Petitioner cites no law, that HSD's obligation to comply with the requirements of Section 504 and ADA Title II equates with an obligation to "enforce" those requirements by adjudicating claimed violations of those requirements in an HSD fair hearing. "Compliance" and "enforcement" are distinct concepts. *Compare Webster's New Int'l Dictionary* (unabridged) 465 (3d ed. 2002) (defining "compliance" as "conformity in fulfilling formal or official requirements" or "cooperation promoted by official or legal authority or

conforming to official or legal norms"), *with Black's Law Dictionary* 645 (10th ed. 2014) (defining "enforcement" as "[t]he act or process of compelling compliance with a law, mandate, command, decree, or agreement"). And a statutory obligation to *comply* with federal anti-discrimination law does not itself constitute authority to *enforce* that law through adjudication of claims arising under that law.

**{21}** Looking to the plain language of 8.352.2.10 NMAC (defining adverse action), decisions regarding the manner or circumstances of a Medicaid beneficiary's non-emergency medical transportation do not in and of them themselves amount to a reduction, termination, or refusal to provide medically necessary services, as they are properly within the State's authority. *See Alexander v. Choate*, 469 U.S. 287, 303 (1985) ("The federal Medicaid Act . . . gives the [s]tates substantial discretion to choose the proper mix of amount, scope, and duration limitations on coverage, as long as care and services are provided in 'the best interests of the recipients.' " (quoting 42 U.S.C. § 1396a(a)(19)). The MCO was prepared to provide transportation to Petitioner or, alternatively, was willing to reimburse transportation expenses incurred by family members or friends. But Petitioner refused, insisting on the provision of a female driver, the same driver for all legs of a given trip, and the absence of any male passengers in the vehicle transporting her. The MCO informed her that it would not be possible to uniformly comply or to guarantee compliance with her stated conditions, and advised of its own countervailing concerns that accommodating Petitioner's requests might necessitate discrimination against its drivers or would-be passengers. We agree that the claims asserted by Petitioner do not arise out of an adverse action contemplated under State law and corresponding regulations, as they do not involve a denial or reduction in services or failure to approve a service in a timely manner. *See* Section 27-3-3; 8.352.2.10 NMAC.

**{22}** In *Martinez*, we considered "whether the New Mexico State Personnel Board is [authorized] to adjudicate statutory disability discrimination claims in administrative just cause termination proceedings." *Martinez*, 2000-NMCA-074, ¶ 1. In answering that question in the negative, we determined that "[t]he [Personnel] Board is a public administrative body created by statute [and is t]herefore . . . limited to the power and authority expressly granted or necessarily implied by statute, which expressly defines its duties." *Id.* ¶ 22 (citations omitted). This Court held that neither the statute nor the regulations promulgated under the Personnel Act by the Board, nor the Human Rights Act, "expressly grant[ed] the Board the power to resolve claims of discrimination raised by an employee challenging an agency's adverse personnel action." *Id.* ¶ 24. This Court concluded that had the Legislature intended a sharing of authority between the Personnel Board and the Human Rights Commission, it would have expressly conferred it, or established a procedural method for doing so that would not conflict with the authority of the Human Rights Bureau. *Id.* ¶ 26. "In the absence of explicit language in the Personnel Act and the Board Rules, we conclude that the authority to decide whether a violation of the ADA [Title II] or the [Human Rights Act] has occurred rests exclusively with those administrative agencies, such as the EEOC and the [New Mexico Human Rights Commission], who have express statutory authority to adjudicate such

claims and have specialized knowledge and expertise in preventing and remedying unlawful discrimination." *Id.* ¶ 27.

**{23}**    Similarly, in this case, neither the Public Assistance Act nor the Medicaid Act relied on by Petitioner expressly grants MAD the power to resolve discrimination claims raised by a Medicaid beneficiary challenging an agency's denial or inaction in response to a request for accommodation. Nor is any such power vested in MAD by any regulations promulgated under State law. This Court has upheld "the longstanding principle that administrative agencies are bound by their own regulations." *Saenz v. N.M. Dep't of Human Servs., Income Support Div. ex rel. Human Servs. Dep't*, 1982-NMCA-159, ¶ 14, 98 N.M. 805, 653 P.2d 181; *Hillman*, 1979-NMCA-007, ¶ 5. "Statutes create administrative agencies, and agencies are limited to the power and authority that is expressly granted and necessarily implied by statute." *In re Application of PNM Elec. Servs.*, 1998-NMSC-017, ¶ 10, 125 N.M. 302, 961 P.2d 147; *Martinez*, 2000-NMCA-074, ¶ 22 (citing *In re PNM Elec. Servs.* for this proposition). Because HSD and MAD are created by statute, their enforcement authority through adjudication in an HSD fair hearing is limited to that expressly stated or necessarily implied by the law governing the right to an HSD fair hearing. *See Martinez*, 2000-NMCA-074, § 22.

**{24}**    Petitioner argues that *Hyden* controls our analysis. We disagree. In that case the claimant refused to accept conventional in-network medical services offered by the MCO and the MCO refused to cover alternative medical services offered by an out-of-network provider, despite proof that the conventional therapies employed by the in-network providers had proven ineffective, if not harmful, to claimant in treating her conditions. *See Hyden v. N.M. Human Servs. Dep't*, 2000-NMCA-107, ¶¶ 5, 7-8, 130 N.M. 19, 16 P.3d 444. In *Hyden*, as in the case before us, MAD's Director found that no action was taken to terminate, suspend or reduce benefits, and no delay or denial of an application for Medicaid occurred, and thus dismissed the claimant's claim. *Id.* ¶¶ 11-12. In reversing the Director's decision, we concluded: "[A] take-it-or-leave-it offer of treatment that in fact is ineffective or harmful to the recipient is equivalent to a 'denial' or 'non-provision' of medically necessary services." *Id.* ¶ 16. This Court held that the claimant was entitled to a fair hearing under the governing statutes and regulations to determine whether the MCO "has contracted with providers having the necessary qualifications to provide [the p]etitioner with appropriate treatment." *Id.*

**{25}**    *Hyden* is distinguishable from this case because the transportation service provided by the MCO is not, in itself, medically necessary treatment; rather, it is an ancillary service intended to secure access to a medically-necessary treatment. Although Petitioner argues that a lack of appropriate transportation led to the denial of her necessary medical services, the MCO's inability to accede to the type of specialized, mostly gender-based transportation requests made by Petitioner clearly does not amount to the take-it-or-leave-it treatment offer addressed in *Hyden*. The MCO in this case offered Petitioner different transportation service providers and offered to reimburse a family member or friend for transportation services in an effort to cooperate with Petitioner and satisfy her transportation needs. Moreover, unlike the claimant in *Hyden* who provided additional information regarding the harm and ineffectiveness of

her treatment, Petitioner here "fail[ed] to provide any information that would enable [the MCO] to evaluate the request to determine whether or not under the circumstances it is a reasonable request." In failing to accommodate Petitioner, the MCO did not deny coverage for the services altogether so as to require MAD to provide a fair hearing. *See* § 27-3-3; 8.352.2.10 NMAC.

**{26}** When viewed in light of the whole record, and particularly in light of MAD's lack of authority to adjudicate discrimination claims, the agency's decision to deny Petitioner's request for a fair hearing was not unreasonable, without a rational basis, or contrary to law. *See Rio Grande Chapter of the Sierra Club*, 2003-NMSC-005, ¶ 17. We therefore affirm the Director's dismissal.

### III.   The Director's Erroneous Determination That the Human Rights Bureau May Adjudicate ADA Title II and Section 504 Claims Does Not Affect Our Holding

**{27}** Petitioner challenges MAD's conclusion that the Human Rights Bureau was a "more appropriate venue," arguing that the Human Rights Bureau does not have the statutory authority to determine discrimination claims on the basis of disability outside the employer context. *See* NMSA 1978, § 28-1-7 (2004) (prohibiting unlawful discrimination under the Human Rights Act in public accommodations, housing, and employment). HSD argues that the scope of LogistiCare's transportation service is a "public accommodation" within the meaning of the Human Rights Act, which falls within the jurisdiction of the Human Rights Bureau. We agree that MAD's Director erroneously determined that Petitioner's claims could be brought before the Human Rights Bureau under the Human Rights Act, but for a different reason. Because Petitioner has not asserted a claim under that Act; rather, her claim was brought pursuant to federal law— ADA Title II and Section 504.

**{28}** To the extent Petitioner asks this Court to impose statutory authority on the MAD to adjudicate discrimination claims because it is "necessarily implied by statute," *see Martinez*, 2000-NMCA-074, ¶ 22, we decline to do so. The plain language of the state law and regulations governing the Medicaid program, applied as written, precludes such a result. *See generally High Ridge Hinkle Joint Venture*, 1998-NMSC-050, ¶ 5 ("The [C]ourt will not read into a statute or ordinance language which is not there, particularly if it makes sense as written." (internal quotation marks and citation omitted)).

**{29}** Although MAD is not required to provide a fair hearing under these circumstances, Petitioner is free to pursue her claim for meaningful access to benefits using the grievance procedures provided for in the federal statutes and regulations corresponding to her discrimination claim. Concluding that the erroneous determination regarding the proper venue has no effect on the outcome of this appeal and that MAD otherwise lacks implied authority to adjudicate Petitioner's claims, we affirm the dismissal of Petitioner's claim.

**CONCLUSION**

**{30}** Based on the foregoing, we affirm the district court's decision.

**{31} IT IS SO ORDERED.**

**M. MONICA ZAMORA, Chief Judge**

**I CONCUR:**

**JULIE J. VARGAS, Judge**

**LINDA M. VANZI, Judge, concurring in the result.**

**VANZI, Judge, concurring in the result.**

**{32}** I concur in the result affirming the district court's conclusion that HSD/MAD properly dismissed Petitioner's administrative appeal. Petitioner's request for "reasonable accommodation" and her claim that she suffered "adverse action" entitling her to an HSD/MAD fair hearing both are expressly predicated on her allegation that failure to provide transportation services in the specific manner she outlined contravenes Section 504 and ADA Title II.

**{33}** There is no dispute that Petitioner has rights under Section 504 and ADA Title II, nor any dispute that HSD/MAD must comply with those statutes. But this does not equate to a conclusion that HSD has legal authority to enforce these federal statutes through adjudication of claims arising under them in an HSD/MAD fair hearing, as Petitioner contends. *See In re Application of PNM Elec. Servs., Div.*, 1998-NMSC-017, ¶ 10 ("Statutes create administrative agencies, and agencies are limited to the power and authority that is expressly granted and necessarily implied by statute.").

**{34}** Petitioner argued (here and in the district court) that HSD, "as part of its overall obligations to enforce the anti-discrimination requirements of Section 504, ADA Title II, and their implementing regulations—is specifically required by the regulations to have 'grievance procedures' that provide for the 'prompt and equitable resolution of complaints alleging any action that violates those requirements." Both 45 C.F.R. § 84.7 (Section 504) and 28 C.F.R. § 35.107(b) (ADA Title II) require that entities to which Section 504 and the ADA Title II apply must establish grievance procedures for resolution of complaints "alleging any action prohibited by this part." 28 C.F.R. § 35.107(b). However, although Petitioner stated, "It appears that [HSD] has never adopted any such procedures[,]" she did not argue for reversal on this basis. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."); *see also Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 65, 146 N.M. 853, 215 P.3d 791 ("It is the duty of the appellant to provide a record adequate to review the issues on appeal."). Regardless, the authority of HSD/MAD to adjudicate matters in an HSD/MAD fair hearing is still limited to the authority expressly stated or necessarily implied by the law governing the right to a fair hearing. *In re PNM Elec. Servs., Div.*, 1998-NMSC-017, ¶

10; *Martinez*, 2000-NMCA-074, ¶ 22. For the foregoing reasons, I agree with the district court's conclusion that "HSD properly dismissed the case" because Petitioner failed to identify any statute or rule authorizing HSD "to decide and adjudicate violations of the ADA [Title II] or Section 504[,]" and I agree with the result in this case affirming the district court on this point. I cannot concur, however, in the Majority's dicta, especially its statements concerning the jurisdiction of the Human Rights Bureau. I also take issue with some of the Majority's characterizations of the arguments, the record, and the law.

**The Majority's Dicta**

**{35}**  The district court affirmed the dismissal of Petitioner's administrative appeal solely on the basis of Petitioner's failure to identify any statute or rule authorizing HSD "to decide and adjudicate violations of the ADA [Title II] or Section 504." The court did not address any other issue, including MAD's statement that "a more appropriate venue would be the New Mexico Human Rights Bureau"; HSD's contention that Petitioner's claim is within "the exclusive province of the New Mexico Human Rights Commission"; or whether Petitioner's claim meets the definition of an "adverse action" for which there is a right to an HSD/MAD fair hearing.

**{36}**  This Court ordinarily does not consider issues not ruled on by the district court. *See, e.g.*, *Batchelor v. Charley*, 1965-NMSC-001, ¶ 6, 74 N.M. 717, 398 P.2d 49 (declining to review issue where appellant failed to meet the burden "to show that the question presented for review was ruled upon by the trial court"); *Luevano v. Grp. One*, 1989-NMCA-061, ¶ 7, 108 N.M. 774, 779 P.2d 552 (stating, in declining to address issues, that "[a]n appellant has the burden of showing that a question presented for review on appeal was ruled upon by the trial court"). The sole ground on which the district court relied in affirming the dismissal of Petitioner's administrative appeal fully resolves this appeal, and I see no reason to decide any issue the district court did not rule on. Accordingly, I would not reach out to conclude, as the Majority does, that "the claims asserted by Petitioner do not arise out of an adverse action contemplated under State law and corresponding regulations, as they do not involve a denial or reduction in services or failure to approve a service in a timely manner[,]" Maj. Op. ¶ 21, and that "the MCO did not deny coverage for the services altogether [for purposes of] requir[ing] MAD to provide a fair hearing." *Id.* ¶ 25.

**{37}**  Of greater concern is the Majority's conclusion that "MAD's Director erroneously determined that Petitioner's claims could be brought before the Human Rights Bureau under the Human Rights Act[.]" Maj. Op. ¶ 27. This statement constitutes a pronouncement about the scope of the jurisdiction of the Human Rights Bureau in a case in which resolution of the issue "has no effect on the outcome of this appeal." Maj. Op. ¶ 29. In other words, it is pure dicta. *See, e.g.*, *Ruggles v. Ruggles*, 1993-NMSC-043, ¶ 22 n.8, 116 N.M. 52, 860 P.2d 182 (statements "unnecessary to decision of the issue before the Court" are dicta, "no matter how deliberately or emphatically phrased"); *Kent Nowlin Constr. Co. v. Gutierrez*, 1982-NMSC-123, ¶ 8, 99 N.M. 389, 658 P.2d 1116 ("Dictum is unnecessary to the holding of a case and therefore is not binding as a rule of law."). I cannot concur. *See Porter v. Robert Porter & Sons, Inc.*, 1961-NMSC-

010, ¶ 18, 68 N.M. 97, 359 P.2d 134, ("[O]n appeal this Court will not make useless orders nor grant relief that will avail appellant nothing, and neither will it decide questions that are abstract, hypothetical or moot[.]").

**The Majority's Characterizations**

**{38}** The Majority states that Petitioner's arguments here and in the district court include that "MAD violated her due process rights under the Fourteenth Amendment of the United States Constitution[,]" Maj. Op. ¶ 2, and that "denial of [the] requested accommodation amounted to discrimination on the basis of disability in violation of Section 504, ADA Title II, and the Due Process Clause of the Fourteenth Amendment of the United States Constitution." *Id.* ¶ 7. I question the Majority's implicit conclusions that Petitioner preserved and sufficiently developed an argument for reversal based on the Due Process Clause of the Fourteenth Amendment. To the extent Petitioner can be said to have done so, however, her argument is that the Fourteenth Amendment Due Process Clause affords the *procedural* right to be heard, not that she was deprived of the *substantive* right to be free from discrimination, a right the Fourteenth Amendment does not guarantee in the Due Process Clause, but rather in the Equal Protection Clause. The Majority's statement that it does not address this argument does not obviate the obligation to ensure that what is stated in the opinion accurately characterizes the arguments, the record, and the law.

**{39}** The Majority's statement in footnote 6 disclaiming the need to "reach the question of whether the MCO or LogistiCare are state actors for purposes of being bound by the statutes and regulations applied to HSD[,]" Maj. Op. ¶ 15 n.6, suggests an erroneous understanding of the state-action doctrine and the reason for the statement in *Hyden* the Majority quotes. The Fourteenth Amendment, by its terms, proscribes conduct by state actors (as distinct from private actors). *See* U.S. Const. amend. XIV § 1 ("No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."). In *Hyden*, the district court affirmed the dismissal of Hyden's administrative appeal "on the ground that the MCO was not a state actor, and therefore, the MCO's actions did not trigger a right to procedural due process." 2000-NMCA-107, ¶¶ 1, 14. Hyden argued on appeal to this Court that "this case can be resolved without reaching the constitutional issues on which the district court based its ruling" because state statutes and regulations provide the right to a fair hearing she asserted. *Id.* ¶ 15.

**{40}** The issue of state action was relevant in *Hyden* only because the district court's decision rested on its conclusion that "medical review decisions that result in a reduction, suspension or termination of benefits . . . do not trigger constitutionally protected due process rights" because the decision-maker is not a state actor. *Id.* ¶ 14 (internal quotation marks omitted). Here, where the Majority states that it does not address the due process argument and there is no argument that Petitioner was not entitled to an HSD/MAD fair hearing based on lack of state action, the Majority's state-

action commentary is irrelevant and inapt, and its reliance on *Hyden* misplaced. Errors and mischaracterizations that do not alter the result are errors and mischaracterizations just the same, and we have an obligation to avoid them.

**{41}** The Majority states that "*Hyden* is distinguishable from this case because the transportation service provided by the MCO is not, in itself, medically-necessary treatment." Maj. Op. ¶ 25. Although I agree with the Majority that the inability to guarantee Petitioner's specific requests in every instance is different from the take-it-or-leave-it offer addressed in *Hyden*, Maj. Op. ¶ 25, the principal reason Petitioner is wrong in contending that *Hyden* controls the analysis here is that *Hyden* does not address whether rights arising under Federal anti-discrimination statutes may be adjudicated in an HSD/MAD fair hearing. And the conclusion that no law authorizes adjudication of claims arising under Section 504 and the ADA Title II in an HSD/MAD fair hearing fully resolves this appeal.

**LINDA M. VANZI, Judge**